IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LATONYA THORNHILL, | ) | CASE NO. 2:16-cv-00962-ALM-KAJ |
| Plaintiff, | ) ) | JUDGE ALGENON L. MARBLEY |
| v. | ) ) | |
| WALDEN UNIVERSITY, LLC, et al., | ) ) | |
| Defendants. | ) ) | **DEFENDANTS' MOTION TO STRIKE** **CLASS ACTION ALLEGATIONS** |

Defendants, Walden University, LLC ("Walden") and Laureate Education, Inc. ("Laureate"), pursuant to Rules 12(f) and 23(d)(1)(D) of the Federal Rules of Civil Procedure ("FRCP") and Local Rule 23.2, hereby move to strike the class action allegations set forth in the Complaint and, in support thereof, state as follows:

1.     Plaintiff Latonya Thornhill ("Thornhill") brings this case seeking to recover tuition and other fees she allegedly paid in her unsuccessful attempt to obtain a doctoral degree in Philosophy of Management from Walden.

2.     Thornhill asserts claims on behalf of herself and a proposed nationwide Class and an Ohio Sub-Class of alleged similarly situated Walden doctoral students.

3.     Neither the proposed nationwide Class, nor the Ohio Sub-Class could ever be properly certified under FRCP Rule 23.  On the face of the Complaint, the proposed class action not only fails for lack of a legally ascertainable class, but for lack of predominance, typicality and superiority.  As the central legal defects in the class action allegations cannot be remedied by amendment or further certification procedures, the class action allegations in the Complaint should be stricken pursuant to the above-referenced rules.

1

4.     The reasons for and authorities supporting this Motion are set forth in the attached Memorandum of Law, which is incorporated herein by reference.

**WHEREFORE**, for all the foregoing reasons, the Defendants respectfully request that this Court enter the attached Order striking all class action allegations in the Complaint.

Date:  December 16, 2016                          Respectfully submitted,

*s/Sanford E. Watson (Trial Attorney)*
Sanford E. Watson (0040862), Trial Attorney
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Telephone:    216-592-5000
Facsimile:     216-592-5009
E-mail:          sanford.watson@tuckerellis.com

Brian Laliberte (0071125)
Scott J. Stitt (0073943)
TUCKER ELLIS LLP
175 South Third Street, Suite 520
Columbus, OH 43215
Telephone:   614-358-9717
Facsimile:    614-358-9712
E-mail:          brian.laliberte@tuckerellis.com
                    scott.stitt@tuckerellis.com

*Of counsel:*

Kathleen Pontone (*pro hac vice* pending)
Anthony Walter Kraus (*pro hac vice* pending)
Stephanie Kaye Baron (*pro hac vice* pending)
MILES & STOCKBRIDGE PC
100 Light Street
Baltimore, MD 21202
Telephone:    410-727-6464
Facsimile:     410-385-3700
E-mail:    kpontone@milesstockbridge.com
               akraus@milesstockbridge.com
               sbaron@milesstockbridge.com

*Counsel for Defendants Walden University, LLC and Laureate International Universities d/b/a Laureate Education Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2016, a copy of the foregoing **Defendants' Motion to Strike Class Action Allegations** was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

<u>*s/Sanford E. Watson (Trial Attorney)*</u>
Sanford E. Watson (0040862), Trial Attorney
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Telephone:    216-592-5000
Facsimile:    216-592-5009
E-mail:  sanford.watson@tuckerellis.com

*Counsel for Defendants Walden University, LLC, and Laureate Universities dba Laureate Education, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LATONYA THORNHILL, | ) CASE NO. 2:16-cv-00962-ALM-KAJ |
| Plaintiff, | ) |
| | ) JUDGE ALGENON L. MARBLEY |
| v. | ) |
| | ) |
| WALDEN UNIVERSITY, LLC, et al., | ) |
| | ) **ORDER STRIKING CLASS ACTION** |
| Defendants. | ) **ALLEGATIONS** |

Upon consideration of the Defendants' Motion to Strike Class Action Allegations, and

any opposition thereto, it is this _____ day of _____, 2017 hereby **ORDERED:**

1. Defendants' Motion to Strike Class Action Allegations be, and the same hereby is,

   **GRANTED;**

2. All class action allegations in the Complaint are hereby **STRICKEN**.


_____
Judge Algenon L. Marbley
United States District Judge


4844-6312-2493, v. 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LATONYA THORNHILL, | ) | CASE NO. 2:16-cv-00962-ALM-KAJ |
| | ) | |
| Plaintiff, | ) | JUDGE ALGENON L. MARBLEY |
| | ) | |
| v. | ) | |
| | ) | |
| WALDEN UNIVERSITY, LLC, et al., | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **DEFENDANTS' MOTION TO STRIKE** |
| Defendants. | ) | **CLASS ACTION ALLEGATIONS** |

Sanford E. Watson (0040862), Trial Attorney
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Telephone:  216-592-5000
Facsimile:  216-592-5009
E-mail:  sanford.watson@tuckerellis.com

Brian Laliberte (0071125)
Scott J. Stitt (0073943)
TUCKER ELLIS LLP
175 South Third Street, Suite 520
Columbus, OH 43215
Telephone:  614-358-9717
Facsimile:  614-358-9712
E-mail:  brian.laliberte@tuckerellis.com
           scott.stitt@tuckerellis.com

*Of Counsel:*

Kathleen Pontone (*pro hac vice* pending)
Anthony Walter Kraus (*pro hac vice* pending)
Stephanie Kaye Baron (*pro hac vice* pending)
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, MD 21202
Telephone:     410-727-6464
Facsimile:      410-385-3700
E-mail:     kpontone@milesstockbridge.com
              akraus@milesstockbridge.com
              sbaron@milesstockbridge.com

*Counsel for Defendants Walden University, LLC and*
*Laureate International Universities d/b/a Laureate*
*Education Inc.*

## TABLE OF CONTENTS

**Page**

SUMMARY OF MEMORANDUM PURSUANT TO LOCAL RULE 7.2(3) ....................v

1.    The Nationwide Class and Ohio Sub-Class are Overly Broad and Unascertainable .................................................................................v

2.    The Proposed Nationwide Class Fails For Lack of Predominance Due to the Applicability of Different Laws to each Class Member's Claims ...............................................................................................vi

3.    Individualized Factual Issues Defeat the Nationwide Class and Ohio Sub-Class ..................................................................................vi

4.    Thornhill's Claims are not Typical of the Proposed Nationwide Class or Ohio Sub-Class .......................................................................viii

5.    Individual Litigation is Superior to the Proposed Class Action .........................viii

INTRODUCTION.........................................................................................1

STATEMENT OF CLASS ALLEGATIONS....................................................4

STANDARD OF REVIEW ...........................................................................6

ARGUMENT ..............................................................................................8

I.    The Nationwide Class and Ohio Sub-Class are Overly Broad and Unascertainable .........................................................................8

II.    The Alleged Nationwide Class Fails for Lack of Predominance Because Plaintiff's Claims Present Individualized Legal Issues under the laws of Fifty Different States and Possibly other American Jurisdictions.........................................................................11

III.    Individualized Factual Issues Defeat the Nationwide Class and Ohio Sub-Class ..................................................................................14

    A.    Lack of Predominance – Fraud and Consumer Protection Statues .......................................................................................15

    B.    Lack of Predominance – Breach of Contract and Unjust Enrichment.................................................................................20

IV.    Thornhill's Claims are not Typical of the Proposed Nationwide Class or Ohio Sub-Class .......................................................................22

V.      Individual Litigation is Superior to the Proposed Class Action ..........................23

**CONCLUSION** ....................................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**<u>CASE</u>**                                                                                                      **<u>PAGE(S)</u>**

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ................................................................10,23

*Colley v. P&G*, Case No. 1:16-cv-918, 2016 U.S. Dist. LEXIS 137725 (S.D. Ohio,
Oct. 4, 2016) ................................................................................................................passim

*Cowit v. Citimortgage, Inc.*, Case No. 1:12-cv-869, 2013 U.S. Dist. LEXIS 32219
(S.D. Ohio, Mar. 8, 2013) ...........................................................................................passim

*Daniels v. City of Wyoming*, Case No. 1:15-cv-507, 2016 U.S. Dist. LEXIS
16243 (S.D. Ohio, February 10, 2016................................................................................6,7

*Lichoff v. CSX Transp. Inc.* 218 F.R.D. 564 (N.D. Ohio 2003)...........................................15

*Lilly v. Career Educ. Corp.*, 2012 Ill. App. (5th), 100614-U ¶6; 2012 Ill. App.
Unpub. LEXIS 2583 (Ill. App. (5th), Oct. 25, 2012)...........................................................15

*Loreto v. The Procter & Gamble Co.*, No. 1:09cv815, 2013 U.S. Dist. LEXIS
162752 (S.D. Ohio Nov. 15, 2013)................................................................................10,15

*McGee v. East Ohio Gas Co.*, 200 F.R.D. 382 (S.D. Ohio 2001) .......................................10

*M.S. Wholesale Plumbing Inc. v. Univ. Sports Publs. Co.*, No. 4:07CV00730 SWW,
2008 U.S. Dist. LEXIS 124000 (E.D. Ark., May 22, 2008)................................................15

*Pilgrim v. Universal Health Care, LLC,* 660 F.3d 943 (6th Cir. 2011)..............................passim

*Pipefitters Local 636 v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618
(6th Cir. 2011)......................................................................................................................6

*Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592
(6th Cir. 2007)....................................................................................................................12

*Rikos v. P&G*, Case No. 1:11-cv-226, 2012 U.S. Dist. LEXIS 25104 (S.D. Ohio,
Feb. 28, 2012) ....................................................................................................................13

*Romberio v. UnumProvident*, 385 F. App'x 423 (6th Cir. 2007) .........................................11,22

*Schumacher v. State Auto Mut. Ins. Co.,* Case No. 1:13-cv-00232, 2015 U.S. Dist.
LEXIS 11857 (S.D. Ohio, Feb. 2, 2015) ....................................................................passim

*Sherrod v. Enigma Software Grp. U.S.A, LLC,* Case No.: 2:13-cv-36, 2016
U.S. Dist. LEXIS 179 (S.D. Ohio, Jan. 4, 2016) .............................................................7,21

*Sprague v. Gen. Motors Corp.*, 133 F.3d. 388 (6th Cir. 1998)...............................................22

iv

**CASE**                                                     **PAGE(S)**

*Stuart v. Cheek & Zeehandelar*, 252 F.R.D. 387 (S.D. Ohio 2008) ......................................8

*Stout v. J.D. Byrider*, 228 F.3d 709 (6th Cir. 2000)...............................................................15

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996).........................................................6

*In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297 (E.D. Mich. 2001)..............................12

## RULES AND STATUTES

Fed.R.Civ.P. 23 ................................................................................................................passim

O.R.C. § 1345.02 ................................................................................................................ 20

## SUMMARY OF MEMORANDUM PURUSANT TO
## <u>LOCAL RULE 7.2(3)</u>

Plaintiff Latonya Thornhill ("Thornhill") alleges that the Defendants, Walden University, LLC ("Walden") and Laureate Education, Inc. ("Laureate"), misrepresented the amount of time it would take her to complete her doctoral dissertation and otherwise delayed her progress toward getting a PhD.  Thornhill asserts claims under Maryland law on behalf of herself and a purported nationwide class of, "All current or former students of Walden University who enrolled in and paid for a doctoral degree dissertation course at Walden University ('Class')."  Alternatively, Plaintiff seeks certification for similar claims asserted under Ohio law of a purported sub-class of "current or former students of Walden University who enrolled in and paid for a doctoral degree dissertation course at Walden University while residing in Ohio ('Ohio Sub-Class')."

On their face, the class action allegations in the Complaint are fatally flawed and should be stricken for the following reasons:

1. **The Nationwide Class and Ohio Sub-Class are Overly Broad and Unascertainable (pp. 8-11)**.

As defined, neither the Class, nor the Ohio Sub-Class is temporally limited to the period of time in which the events described in the Complaint allegedly took place.  Moreover, both proposed classes include students who successfully obtained degrees consistent with their expectations, as well as those who failed to complete their degrees for reasons unrelated to Defendants' alleged misconduct.  Thus, ascertainment of a class comprised only of those injured by the Defendants' alleged misconduct would necessitate individualized fact-finding, thereby precluding any class certification as a matter of law.

**2.      The Proposed Nationwide Class Fails For Lack of Predominance Due to the Applicability of Different Laws to each Class Member's Claims (pp. 11-14).**

Thornhill's effort to certify a nationwide Class under Maryland law contradicts Ohio's well-settled choice-of-law principles.  Particularly, the claims of the nationwide Class are not uniformly governed by the laws of the State of Maryland as Plaintiff alleges, but are disparately governed by the laws of the home-state of each member of the Class.  As a result, any alleged common issues cannot predominate over disparate legal questions affecting the Class.  Thus, and choice-of-law is fatal to any attempt to certify this case as a nationwide class action.

**3.      Individualized Factual Issues Defeat the Nationwide Class and Ohio Sub-Class (pp. 14-22)**

Beyond the choice-of-law issues, individualized issues of fact defeat any attempt to certify the Class or the Ohio Sub-Class.  On their face, the claims asserted in the Complaint arise out of a disparate set of alleged verbal and written promises and representations made by the Defendants to students enrolled in a variety of different degree programs.  Thus, any judicial resolution of those claims will necessitate highly individualized inquiries into: (i) the precise promises and representations made to each student enrolled in different doctoral programs at different times, (ii) each student's alleged reliance on those promises and representations; (iii) the manner in which Walden allegedly breached its promises or otherwise failed to comply with its representations in the context of each student's participation in the Walden dissertation process; and (iv) whether and to what extent each student suffered damages as a result.  Thus, any purportedly common issues of fact cannot predominate and will be overwhelmed by individualized factual issues affecting each class member, so as to preclude class certification.

**4.** **Thornhill's Claims are not Typical of the Proposed Nationwide Class or Ohio Sub-Class. (pp. 22-23)**

Thornhill's alleged experience at Walden is not typical of any cognizable class of Walden doctoral students.  On the face of the Complaint, there are material differences between (i) the alleged promises and representations made to Thornhill and those allegedly made to other members of the purported nationwide Class and Ohio Sub-Class; and (ii) the reasons for Thornhill's alleged failure to timely complete her doctoral degree with Walden and those of other Walden students.  Thus, the proposed classes fail for lack of typicality.

**5.** **Individual Litigation is Superior to the Proposed Class Action (p. 23)**

Finally, a class action is not the superior method of adjudicating Plaintiff's claims.  As alleged, the amount of damages potentially recoverable by an individual plaintiff in this case is not insignificant.  Thornhill claims that in her unsuccessful pursuit of a doctoral degree with Walden, she spent and now seeks to recover in excess $ 67,000 in tuition and other fees, and further alleges that other class members spent upwards to $100,000 to $200,000.  These alleged compensatory damages are exclusive of claimed attorneys' fees and exemplary damages.  Thus, this is not a case where small individual recoveries necessitate aggregating claims into a class action, so as to make them worth pursuing.

*     *     *     *     *     *     *     *

No amount of discovery will alter the central legal defects in Plaintiff's class allegations, and any further amendment of those allegations would be futile.  As such, the class allegations in the Complaint fail as a matter of law and should be stricken.

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION TO STRIKE CLASS ACTION ALLEGATIONS**

Defendants, Walden University, LLC ("Walden") and Laureate Education, Inc. ("Laureate") file this Memorandum in Support of their Motion to Strike Class Action Allegations.

## INTRODUCTION

Plaintiff Latonya Thornhill ("Thornhill") brings this case seeking to recover tuition and other fees she allegedly paid in her unsuccessful attempt to obtain a doctoral degree in Philosophy of Management from Walden.  After completing the necessary coursework for her degree (about which she makes no complaint), Thornhill alleges that she embarked upon a dissertation process that Walden allegedly designed  "to ensure that it would be difficult, if not impossible, for students to timely complete, or [to] complete at all, . . . ." (Dkt. No. 1, Complaint ("Compl."), ¶ 1).  Alleging that she was told by Walden that she could finish her dissertation in 18 months (*Id*.,¶ 147), Thornhill claims that she was unable to do so due to a series of obstacles that Walden allegedly erected for the purpose of delaying the dissertation process, and thereby increasing the amount of tuition and other fees she was required to pay.  Thus, Thornhill claims that her failure to obtain a doctoral degree from Walden had nothing to do with the quality of her own academic performance, but was the result of a "fraud" perpetuated against her by the Defendants.

Baldly alleging that her experiences "were similar to those experienced by numerous other students attempting to navigate the dissertation process across all of Walden's PhD disciplines" (*Id*., ¶ 175), Thornhill asserts claims on behalf of herself and a purported class of:

> All current or former students of Walden University who enrolled in and paid for a doctoral degree dissertation course at Walden University ("Class").

1

(*Id.*, ¶ 177). Thornhill, an Ohio resident, seeks:

> certification of a **nationwide** Class **under Maryland law**, including certification of claims sounding in fraud in the inducement (First Cause of Action), breach of contract (Second Cause of Action), violations of the Maryland Consumer Protection Act (Third Cause of Action) and unjust enrichment (Fourth Cause of Action).

(*Id.*, ¶ 177) (emphasis added). Alternatively, Plaintiff seeks certification for similar claims asserted under Ohio law of a purported sub-class of "current or former students of Walden University who enrolled in and paid for a doctoral degree dissertation course at Walden University while residing in Ohio ('Ohio Sub-Class')." (*Id.*, ¶ 178).

On the face of the Complaint, neither the purported nationwide Class, nor the Ohio Sub-Class can be properly certified under Rule 23 of the Federal Rules of Civil Procedure ("FRCP"). As defined, both the nationwide Class and the Ohio Sub-Class are overly broad and unascertainable. Neither the Class, nor the Ohio Sub-Class is temporally limited to the period of time in which the events described in the Complaint allegedly took place. Moreover, both the Class and the Ohio Sub-Class are comprised of all students who enrolled in and paid for a doctoral degree dissertation course from Walden. These broadly defined classes necessarily include students who successfully obtained degrees consistent with their expectations, as well as those who failed to complete their degrees for reasons unrelated to Defendants' alleged misconduct. Thus, ascertainment of a class comprised only of those injured by the Defendants' alleged misconduct would necessitate individualized fact-finding of the alleged promises and representations made to each class member, as well as the circumstances affecting each class member's participation in a Walden's doctoral program, thereby precluding any class certification as a matter of law.

Furthermore, Thornhill's effort to certify a nationwide Class under Maryland law contradicts Ohio's well-settled choice-of-law principles. Application of those principles to the claims asserted in this case require that this Court apply the law of the state where each class member resides, not where the Defendants maintain their principal places of business. Thus, the claims of the nationwide Class are not uniformly governed by the laws of the State of Maryland as Plaintiff alleges, but are disparately governed by the laws of the home-state of each individual member of the Class. As a result, any alleged common issues cannot predominate over disparate legal questions affecting individual members of the Class under the laws of fifty (50) different states and any other relevant American jurisdiction. Thus, choice-of-law is fatal to any attempt to certify this case as a nationwide class action.

Beyond choice of law, claims arising out of Thornhill's individual experience with Walden's dissertation process are neither predominantly common to, nor typical of the experience of other members of the Class or the Ohio Sub-Class. While Thornhill purports to have relied on certain alleged representations of Walden enrollment advisors (whom Thornhill calls "recruiters") with whom she personally dealt, there is no allegation that she even reviewed, much less relied on other purported representations regarding "on-time completion rate" or "normal completion time" found on Defendants' websites. Similarly, as demonstrated by the web-posts of other doctorial students referenced in the Complaint, whether and how long it takes a student to complete the dissertation process inherently depends on a variety of individualized circumstances affecting each student. As a result, any purportedly common issues of fact cannot predominate and will be overwhelmed by individualized factual questions affecting each class member, so as to preclude class certification. These and other factors readily apparent from the

face of the Complaint demonstrate that a class action is not the superior method of adjudicating Plaintiff's claims.

Thus, as explained below, Plaintiff's claims are not amendable to class certification and, if viable at all, should proceed on an individual basis.

## STATEMENT OF CLASS ALLEGATIONS

In her Complaint, Thornhill purports to seek redress for herself "and thousands of similarly situated doctoral students who were harmed by Walden's dissertation process ('the Walden Dissertation Process') . . . ." (Compl., ¶ 1).  Based on an alleged course of events that resulted in her own failure to obtain a doctoral degree from Walden in the Philosophy of Management, Thornhill baldly claims that her experiences "were similar to those experienced by numerous other students attempting to navigate the dissertation process across all of Walden's PhD disciplines." (*Id.*, ¶ 175).

A review of the allegations asserted in Thornhill's Complaint belies that contention.  As set forth in the Statement of Facts on pages 2-11 of the Memorandum in Support of Defendants' Motion to Dismiss (which is incorporated herein by reference), Thornhill's alleged experience with the Walden Dissertation Process varies in numerous material respects from those of the alleged nationwide Class and Ohio Sub-Class.[1]  On its face, the Complaint reveals material differences between the alleged promises and representations made to Thornhill and those allegedly made over time to other students.  As further reflected in the Complaint, the reasons for each student's alleged failure to timely complete a doctoral degree with Walden vary widely based on his or her individual experience with the program.

---

[1] In the interest of conciseness, the Defendants have not repeated that Statement of Facts in this Memorandum, but simply incorporate herein by reference the Statement, as well as certain other portions of their Memorandum in Support of Defendants' Motion to Dismiss.

Notwithstanding these differences, Thornhill avers that her allegations give rise to a series of "common questions [that] may be determined without reference to individual circumstances and will provide common answers." (*Id.*, ¶ 180). Thornhill presents allegedly common factual questions of whether "with knowledge of its abysmally low PhD completion rate," Walden: (i) "promised potential and current students unrealistic timelines to completion of its PhD program" (*Id.*, ¶180b & c); and (ii) "made false representations to its students about their actual chances of even completing a PhD program at Walden." (*Id.*, ¶ 180d). With respect to Walden's alleged breach of those promises and representations, purported common factual questions include: (i) "[w]hether Walden maintains institutional control over its doctorial programs;" (*Id.*, ¶180a); and (ii) "[w]hether Walden and Laureate constructed and implemented a system which caused the dissertation process to last longer than represented so that Walden could generate additional revenue through tuition payments (thereby also generating profits for Laureate)." (*Id.*, ¶ 180e).

Thornhill then presents three allegedly common questions that beg the legal issues pled in the Complaint: (i) "[w]hether Walden and Laureate have been unjustly enriched by their conduct at the expense of the Class" (*Id.*, ¶ 180e); (ii) "[w]hether Walden breached its contracts with Class" (*Id.*, ¶ 180f); and (iii) "[w]hether Walden and Laureate violated consumer protection statutes by virtue of their conduct toward the Class." (*Id.*, ¶180g). Thornhill alleges in wholly conclusory fashion that these "common questions of law and fact . . . predominate over any questions affecting only individual members of the Class." (*Id.*, ¶180). She further avers that her "claims are typical of the claims of the Class." (*Id.*, ¶ 181). Thornhill acknowledges that "[t]here may be differences in the amount of damages sustained by each member of the Class,"

but alleges in wholly conclusory fashion that "class-wide and individual damages can be determined readily… [and] will not bar Class certification." (*Id.*, ¶ 181).

## STANDARD OF REVIEW

"The party seeking class certification bears the burden of proof." *Colley v. P&G*, Case No. 1:16-cv-918, 2016 U.S. Dist. LEXIS 137725 at * 8 (S.D. Ohio, Oct. 4, 2016) (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996)). "'Given the huge amount of judicial resources expended by class actions, particular care in their issuance is required.'" *Id.* (quoting *Pipefitters Local 636 v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 630 (6th Cir. 2011)).

"A court may strike class action allegations before a motion for class certification where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Schumacher v. State Auto Mut. Ins. Co.*, Case No. 1:13-cv-00232, 2015 U.S. Dist. LEXIS 11857 at * 5 (S.D. Ohio, Feb. 2, 2015) (citing *Pilgrim v. Universal Health Care, LLC*, 660 F.3d 943, 945 (6th Cir. 2011) (hereinafter "*Pilgrim*"). "Striking deficient class allegations comports with Rule 23's directive that courts determine whether a class may be certified '[a]t an early practicable time.'" *Colley*, 2016 U.S. Dist. LEXIS 137725 at * 8 (quoting FRCP 23(c)(1)(A)); *Pilgrim*, at 949. "A court may properly strike class allegations prior to discovery where discovery would not have 'alter[ed] the central defect in th[e] class claim.'" *Id.* at * 9 (quoting *Pilgrim* at 949) (affirming the district court's judgment striking class allegations prior to discovery, finding that the defect in the class action at issue involved "a largely legal determination" that "no proffered factual development offer[ed] any hope of altering it.")). This is especially true in this Court where the Local Rules impose specific requirements for pleading a class action. *Daniels v. City of Wyoming*, Case No. 1:15-cv-507, 2016 U.S. Dist. LEXIS 16243 at * 9 (S.D. Ohio, February 10, 2016) (striking facially deficient class allegations pursuant to S.D.

Ohio Loc. R. 23.2 and FRCP 23(d)(1)(D)); *see also Sherrod v. Enigma Software Grp. U.S.A, LLC,* Case No.: 2:13-cv-36, 2016 U.S. Dist. LEXIS 179 at * 6-7 (S.D. Ohio, Jan. 4, 2016) (noting that "a motion to strike class allegations is a procedural vagabond" that has been filed under FRCP Rule 12(b)(6), 12(f) and 23(d)(1)(D), but "all have been filed with the purpose of accomplishing essentially the same thing: dismissing a plaintiff's class-wide claims").

While "courts should exercise caution when striking class action allegations based solely on the pleadings . . .," this Court routinely strikes facially defective class allegations for which class discovery and further certification proceedings would be futile. *See, e.g., Colley,* 2016 U.S. Dist. LEXIS 137725 at * 9-34 (striking nationwide class and 44 state sub-classes in products liability action as unascertainable and otherwise deficient under Rule 23); *Daniels*, 2016 U.S. Dist. LEXIS 16243 at * 9 (striking class action comprised of local victims of alleged racial profiling as unascertainable and otherwise deficient under Rule 23); *Sherrod v. Enigma Software Grp. U.S.A,* 2016 U.S. Dist. LEXIS 179 at *18 (striking class allegations without discovery and without leave to amend, because "no class discovery would alter the central defect in [plaintiff's] class definition, and . . . granting leave to amend would be futile."); *Schumacher,* 2015 U.S. Dist. LEXIS 11857 at * 21 (striking class action allegations arising out claims of breach of a duty of good faith and fair dealing, fraud in the inducement, and violation of the Ohio Deceptive Trade Practices Act); *Cowit v. Citimortgage, Inc.*, Case No. 1:12-cv-869, 2013 U.S. Dist. LEXIS 32219 at * 5 (S.D. Ohio, Mar. 8. 2013) (striking class action allegations seeking certification of a nationwide class for claims sounding in consumer protection, fraud and unjust enrichment based, in part, on a lack of predominance due to considerable variance in the laws of different states governing the class.)

<u>**ARGUMENT**</u>

To obtain class certification under Rule 23, a plaintiff must meet all of the following prerequisites of FRCP Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*Schumacher*, 2015 U.S. Dist. LEXIS 11857 at *6 (citing *Pilgrim*, 660 F.3d at 945).  "Courts commonly refer to these requirements as (1) numerosity, (2) commonality, (3) typicality and (4) adequacy of representation." *Sherrod,* 2016 U.S. Dist. LEXIS 179 at * 14.  "Once the Rule 23(a) requirements are satisfied, a party seeking class certification also must show that the proposed class is maintainable under one of the three provisions of Rule 23(b)." *Schumacher,* 2015 U.S. Dist. LEXIS 11857 at * 6.  Among the factors considered under Rule 23(b) is predominance, *i.e.*, whether "questions of law or fact common to class members predominate over any questions affecting only individual members." *Id.* (quoting FRCP Rule 23(b)(3)).

**I.      The Nationwide Class and Ohio Sub-Class are Overly Broad and Unascertainable.**

Before analyzing the requirements of Rule 23, "a court should first consider whether a precisely-defined class exists and whether the named plaintiffs are members of the proposed class." *Schumacher*, 2015 U.S. Dist. LEXIS 11857 at * 8; *Cowit*, 2013 U.S. Dist. LEXIS 32219 at * 7.  "Although not an express requirement of Rule 23, 'ascertainability goes to whether the class has been defined such that it encompasses an identifiable group.'" *Id.* (quoting *Stuart v. Cheek & Zeehandelar*, 252 F.R.D. 387, 391 (S.D. Ohio 2008)). "The 'touchstone of ascertainability is whether the class is objectively defined, so that it does not implicate the merits of the case or call for individualized assessments to determine class membership.'" *Id.*

Here, as defined, the nationwide Class and Ohio Sub-Class are overly broad, ambiguous and unascertainable.  While Plaintiff attempts to certify a "nationwide" Class, the definition of the Class ambiguously contains no geographic limitation. (Compl., ¶ 177).  By not limiting the Class to those students who enrolled in and paid for a Walden doctoral degree while residing in the United States, the Class, as defined, is global and could include anyone who ever enrolled in and paid for doctoral degree while residing anywhere in the World.  Furthermore, neither the Class, nor the Ohio Sub-Class is temporally limited in any fashion, much less to the period during which the events described in the Complaint allegedly took place. (*Id.*, ¶¶ 177-78).  While Plaintiffs allege that Walden was "founded in 1970" (*Id.*, ¶ 23), the underlying gravamen of the Complaint relates to Walden's online dissertation process during an undefined period of time in which Walden allegedly made certain promises and representations regarding that process.  Clearly, the Class and Ohio Sub-Class cannot plausibly include students of doctoral programs that pre-dated the Internet, and must be temporally limited to the period of time during which the alleged representations and course of conduct giving rise to the claims occurred.  This is especially true given Plaintiff's claim that the applicable statutes of limitations and repose have been tolled by virtue of Defendants' alleged misrepresentations and concealment of material facts. (*Id.*, ¶¶ 185-190).

Even if these geographic and temporal flaws in the class definitions could be remedied by an amended pleading,[2] a more substantive infirmity renders the proposed Class and Ohio Sub-Class irreparably unascertainable.  "A proposed class is facially 'overbroad if it includes significant numbers of consumers who have not suffered any injury or harm.'"  *Colley,* 2016

---

[2] *See Cowit*, 2013 U.S. Dist. LEXIS 32219 at *10-11 (ordering plaintiff to correct ambiguities in class definition by filing an amended complaint, rather than striking the class action as unascertainable).

U.S.Dist. LEXIS 137725 at * 24 (S.D. Ohio, Oct. 4, 2016) (citing *Loreto v. The Procter & Gamble Co.*, No. 1:09cv815, 2013 U.S. Dist. LEXIS 162752, at * 12 (S.D. Ohio Nov. 15, 2013)). *See also McGee v. East Ohio Gas Co.*, 200 F.R.D. 382, 388 (S.D. Ohio 2001) (a class is overbroad where it "would include members who have not suffered harm at the hands of Defendant and are not at risk to suffer such harm."). "Overbroad classes violate standing requirements under Article III of the United States Constitution." *Id.* (citing *Amchem Prods., Inc.*, 521 U.S. 591, 613 (1997)). "An individual has Article III standing only if he suffered an injury-in-fact that is causally connected to a defendant's alleged wrongdoing." *Id.* "While individual class members do not have to submit evidence of personal standing, a class cannot be certified if any members in the class would lack Article III standing." *Id.* at * 24-25.

Here, the proposed Class and Ohio Sub-Class broadly comprise all students who enrolled in and paid for a doctoral degree dissertation course from Walden. (Compl., ¶¶ 177-78). This broadly defined class necessarily includes students who successfully completed such degrees consistent with their expectations. The very statistics that Thornhill cites in her Complaint to support the allegation that Walden's doctorial completion rates are "abysmally low" (*Id.*, ¶ 180), nevertheless, acknowledge that there is a percentage of students who each year successfully obtain their doctoral degrees from Walden and who cannot assert, as does Thornhill, that they were systematically stymied from doing so. (*Id.*, ¶¶ 36, 41-59). Clearly, those students who have successfully obtained their doctoral degrees have suffered no injury-in-fact as a result of Defendants' alleged wrongdoing. The same is true for any students who enrolled in and paid for a doctoral degree dissertation course from Walden, but failed to complete the course for reasons unrelated to Defendants' alleged misconduct, such as changed career goals, poor academic performance, illness or other personal reasons.

10

Even if one were to focus on the more picayune complaints asserted by Thornhill (such as professors taking longer than 14 days to respond to a student submission or attrition of dissertation committee members), whether such problems resulted in cognizable injury would require a case-by-case determination. Any attempt to ascertain the members of a class comprised only of those injured by the Defendants' alleged conduct, therefore, would necessitate individualized fact-finding as to the alleged promises and representations made to each class member regarding an expected completion time and the circumstances surrounding their alleged failure to timely complete the dissertation course.  As reflected by the alleged promises and representations on which Plaintiff relies in its Complaint, "normal completion time" can vary from degree-to-degree (Compl., ¶¶68-76), and actual completion time depends on variety of individualized factors including, "the pace at which the student chooses to complete the program." (*Id.*, ¶¶ 45-47).  Thus, the only way to distinguish between those injured class members who have standing to sue, and those who do not, would be to engage in the very type of individualized fact-finding that is inherently antithetical to class certification. *Colley,* 2016 U.S. Dist. LEXIS 137725 at * 6 ("'The only way to distinguish between the two set of individuals is to engage in individualized fact-finding,' which 'makes the . . . class definition unsatisfactory.'") (citing *Romberio v. UnumProvident*, 385 F. App'x 423, 431 (6th Cir. 2007)).  As no form of amendment or any amount of discovery will cure this central defect, the class action claims should be stricken.

## II.  The Alleged Nationwide Class Fails for Lack of Predominance Because Plaintiff's Claims Present Individualized Legal Issues under the laws of Fifty Different States and Possibly other American Jurisdictions.

While not identifying the specific subsection of Rule 23(b) under which she seeks certification, Thornhill's Complaint specifically alleges predominance and superiority under

Rule 23(b)(3)  (Compl., ¶¶ 180, 183).  There are no allegations in the Complaint indicating an intention on the part of Thornhill to certify a class under Rules 23(b)(1) or 23(b)(2). *See Colley,* 2016 U.S. Dist. LEXIS 137725 at *31-32 (noting the absence of allegations to support certification under Rule 23(b)(1) and (b)(2) in support of its decision to strike class allegations and the inapplicability of those subsections in a case, like this one, in which the primary relief is monetary damages).

To satisfy the predominance requirement of Rule 23(b)(3), a plaintiff must show that "questions of law or fact common to class members predominate over any questions affecting only individual members." *Schumacher,* 2015 U.S. Dist. LEXIS 11857 at * 15 (quoting *Pilgrim*, 660 F.3d at 946).  A court must determine if the questions common to the class are "at the heart of the litigation." *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007).  There can be no predominance when, "it is clear that individual issues will overwhelm the common questions and render the class action valueless." *Schumacher,* 2015 U.S. Dist. LEXIS 11857 at * 15 (quoting *In re Cardizem CD Antitrust Litig*., 200 F.R.D. 297, 307 (E.D. Mich. 2001).

When the claims asserted by a proposed class are governed by the materially divergent laws of different states, the predominance requirement under Rule 23(b) cannot be met, and the class allegations should be stricken. *Pilgrim*, 660 F.3d at 946 (striking allegations in support of a nationwide class for lack of predominance because "different laws would govern the class members' claims"); *Colley,* 2016 U.S. Dist. LEXIS 1377725, at * 20 ("A class action is improper where the 'laws of the State where each injury took place would govern the individual claims' and those laws 'vary in material ways.'") (quoting *Pilgrim* at 947); *Cowit,* 2013 U.S. Dist. LEXIS 32219 at * 17 (striking class action allegations seeking certification of a nationwide class

for claims sounding in consumer protection, fraud and unjust enrichment based, in part, on a lack of predominance "due to considerable variation in the state laws governing them."); *Rikos v. P&G*, Case No. 1:11-cv-226, 2012 U.S. Dist. LEXIS 25104 (S.D. Ohio, Feb. 28, 2012) (striking allegations of a nationwide class due to applicability of varying state laws governing consumer protection and express warranty claims).

In support of the proposed nationwide Class, Thornhill proceeds from the apparent belief that Maryland law can be uniformly applied to each of her first four claims: fraud in the inducement (Count I), breach of contract (Count II), violations of the Maryland Consumer Protection Act (Count III) and unjust enrichment (Count IV).  As explained in pages 12-25 of the Memorandum in Support Defendants' Motion to Dismiss (which is incorporated herein by reference), however, application of Ohio's choice of law principles defeats plaintiff's attempt to rely on Maryland law for these claims.  Rather, application of those principles requires that this Court apply the law of the state where each class member resides, not where the Defendants maintain their principal places of business.  Thus, the claims of the nationwide Class are not uniformly governed by the laws of the State of Maryland as Plaintiff alleges, but are disparately governed by the laws of the home-state of each individual member of the Class.  As further explained in the Memorandum in Support of Defendants' Motion to Dismiss, the laws governing each of the four claims asserted by Thornhill on behalf of the nationwide Class vary materially from state-to-state.

As the claims asserted on behalf of the proposed nationwide Class are governed by the materially divergent laws of different states, individualized legal issues necessarily overwhelm any allegedly common issues affecting the Class. *See Pilgrim*, 660 F.3d at 947   No amount of

discovery, or proffered amendments to the Complaint will alter this central legal defect in the Complaint. *Id.* Thus, the nationwide Class allegations in the Complaint should be stricken.

## III.  Individualized Factual Issues Defeat the Nationwide Class and Ohio Sub-Class

Beyond the choice-of-law issues that are fatal to the proposed nationwide Class, individualized issues of fact defeat any attempt to certify Class or the Ohio Sub-Class.  In presenting her alleged common issues of fact, Thornhill attempts to generalize the disparate set of alleged promises and representations made by Walden over time by asking this Court to broadly determine whether Walden falsely promised "unrealistic timelines" and misrepresented the "actual chances" of completing a Walden doctoral program. (Compl., ¶180b,c,d). Similarly, Thornhill attempts to generalize the wide variety of alleged problems experienced by Walden doctoral students by asking this Court to broadly determine whether Defendants "constructed and implemented a system which caused the dissertation process to last longer than represented." (*Id.*, ¶ 180e).

Notwithstanding these misleading over-generalizations, in reality, any judicial resolution of these allegedly common questions will necessitate highly individualized inquiries into: (i) the precise promises and representations made to each student enrolled in different doctoral programs at different times, (ii) each student's alleged reliance on those promises and representations; (iii) the manner in which Walden allegedly breached its promises or otherwise failed to comply with its representations in the context of each student's participation in the Walden Dissertation Process; and (iv) whether and to what extent each student suffered damages as a result.  Thus, as explained below, any purportedly common issues of fact cannot predominate and will be overwhelmed by individualized factual issues affecting each class member, so as to preclude class certification.

A.     **Lack of Predominance – Fraud and Consumer Protection Statutes**

In addressing the issue of predominance in the context of common law fraud, this Court recognizes that:

> 'Fraud actions must . . . be separated into two categories: fraud claims based on uniform representations made to all members of the class and fraud claims based on individualized misrepresentations.  The former are appropriate subjects for class certification . . . Where there are material variations in the nature of the misrepresentations made to each member of the proposed class, however, class certification is improper . . . .'

*Schumacher*, 2015 U.S. Dist. 11857 at * 17 (citing *Lichoff v. CSX Transp. Inc.* 218 F.R.D. 564, 571 (N.D. Ohio 2003)). Moreover, as recognized by the Sixth Circuit, "A fraud class action cannot be certified when individual reliance will be an issue." *Id.* (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 718 (6th Cir. 2000)); *see also M.S. Wholesale Plumbing Inc. v. Univ. Sports Publs. Co.*, No. 4:07CV00730 SWW, 2008 U.S. Dist. LEXIS 124000 at *12-13 (E.D. Ark., May 22, 2008) (striking class allegations of fraud based on Defendant's alleged oral statements because "it is certain that resolution of the putative class claims will require plaintiff-by-plaintiff determinations regarding reliance and causation.").

Courts have reached similar conclusions in the context of consumer protection claims premised upon allegations of false and misleading advertising. *See, e.g.*, *Loreto v. P&G*, Case No. 1:09-cv-185, 2013 U.S. Dist. LEXIS 162752 at * 16-17 (S.D. Ohio, November 15, 2013) (striking class allegations under New Jersey's Consumer Fraud Act based, in part, because "individual inquiries would be required to determine whether the . . . [advertised] statement [at issue] played a role in each class member's decision to purchase the Products."); *Lilly v. Career Educ. Corp.*, 2012 Ill. App. (5th), 100614-U ¶6; 2012 Ill. App. Unpub. LEXIS 2583 (Ill. App. (5th), Oct. 25, 2012); *appeal denied* 2013 Ill. LEXIS 544 (Ill., Mar. 27, 2013) (denying class certification to undergraduate students asserting claims of common law fraud and violations of

15

the Illinois Consumer Fraud and Deceptive Business Practice Act because, "each and every class member would need to show that reliance on a misrepresentation of fact caused them damage in order to recover . . . .").

This case clearly falls into the category of fraud actions premised on individualized misrepresentations made to different class members at different times.  While Thornhill alleges that she relied on purported misrepresentations made to her by Walden recruiters in the summer of 2011 (Compl., ¶¶ 78; 147), she does not allege to have relied on the series of statements regarding "on time completion rate" and "normal completion time" that later appeared on Walden's websites and that are featured prominently in the beginning of the Complaint (*Id.*, ¶¶ 41-76).  While the Complaint strains to rely on those later statements as actionable misrepresentations (*id.* ¶¶s 162-164), each individual class member will need to prove who among them,  if  anyone at all, read and relied upon any such statements in applying to Walden and interpreted them in the same contrived manner as Thornhill alleges in her Complaint.  Thornhill likewise does not allege having understood the Walden Handbook to imply, as she attempts to claim, that students could complete their dissertations in 13 months (*id.* ¶¶ 85 and 147 n. 19) or that she reasonably relied upon any supposed 13-month time frame, especially in light of the recruiters purportedly promising her an 18-month timeframe.  Individualized proof of such reliance will also need to be provided by class members, if any, who actually seek to sue on the basis of that provision. (*Id.*).  Furthermore, on their face, the alleged representations made on the Defendants' websites changed over time (*Id.*, ¶¶ 41, 48, 53, 60), and varied from degree-to-degree (*Id.*, ¶¶ 68-76), further multiplying the number of individualized issues of students' having read such statements and having relied upon them in their decision-making.

16

Further disparities arise in the context of alleged statements made to Thornhill and other students by Walden recruiters. Prior to her enrollment, Thornhill alleges that, "Walden recruiters promised that she ***could*** finish her dissertation in 18 months, if she listened to her advisers . . . ." – a statement that also allegedly appeared in Walden's Student Handbook. (*Id*., ¶ 147, *see also* ¶¶ 2, 57, 209, 221, 255, 275) (emphasis added). Elsewhere, however, Thornhill inconsistently alleges that she was told by a recruiter that it "***would*** take only 18 months to earn one's dissertation." (*Id*., ¶¶ 77, 78, 151, 159) (emphasis added). Notwithstanding her inconsistent recollection of the statements allegedly made to her by Walden recruiters, Thornhill claims that she relied on those statements in choosing to enroll in Walden's doctoral program. (*Id.*).

As explained on pages 28 - 29 of the Memorandum in Support of Defendants' Motion to Dismiss (which are incorporated herein by reference) the difference between "could" and "would" materially affects whether an alleged promise or representation is actionable under the legal theories pursued in this case. Both in the context of her own alleged experience, and in connection with broader class-wide allegations,[3] Thornhill makes inconsistent allegations regarding recruiters' use of these two important words. This inconsistency illustrates the necessity of understanding precisely what statements, if any, were made to each class-member by Walden recruiters, and whether and to what extent each class member relied on those statements in choosing to enroll in a Walden doctoral program. Given Thornhill's own inconsistent recollection of the alleged verbal statements made to her by Walden's recruiters, how can she plausibly allege that other class members relied on the same alleged promises or representations?

---

[3] (Compl., ¶¶ 78, 85, 86).

Notwithstanding the material differences between these inconsistently alleged statements, Thornhill, nevertheless, claims that they were "commonly" made by Walden recruiters. In support of this allegation, however, Thornhill points to two unverified e-mails from other doctorial students: (1) an e-mail from a student named "Vette S" claiming that a recruiter told her that "the program would be a three-year Doctorial program . . . ," but making no mention of an 18-month dissertation process; (Compl.,¶ 79); and (2) an e-mail from another student ("Carolyn B") who while complaining that her "18-month program is now in its 4th year," makes no mention of any representations or promises regarding the length of the dissertation process having been made to her by recruiters. (*Id.*, ¶ 80). Additional e-mails referenced later in the Complaint reference other timeframes allegedly promised to them by Walden recruiters. (*Id.*, ¶ 155) (citing 5/29/16 e-mail claiming "when being recruited I was told it was a 3-year program (most students complete in 3 years)"; 6/14/16 e-mail claiming "I was informed that my doctoral program would take on average between 3-4 years to complete, barring any unforeseen life emergencies and would cost approximately $45,000.").

In addition to the lack of uniformity in the alleged misrepresentations, issues of reliance and resulting injury will require individualized fact finding for each class member. While Thornhill alleges that her "experiences mirror those of thousands of other students," the complaints of other students referenced in the Complaint illustrate material differences in the experiences of the individual students involved. (*Id.*, ¶¶ 103-120, 155). For example, Thornhill claims that by denying her access at a certain points in time to the MyDr application[4] and the

---

[4] (*Id.*, ¶¶ 141-42) (alleging that after October 30, 2014, doctoral students were prohibited from using the MyDr application until they completed Chapters 1-3 of their dissertation (*i.e.*, the Proposal).

Walden Writing Center,[5] Walden delayed and ultimately prevented from completing her dissertation. (*Id.*, ¶ 151). Clearly, other students who participated in a Walden doctoral program at other times during which these resources were made available could not make similar claims. Moreover, while the Complaint references web-posts from other students, who were enrolled during the referenced timeframes, most of those postings make no mention of MyDr or the Writing Center as the source of delay in their attempts to complete the Walden Dissertation Process. (*Id.*, ¶ 155).

Many of those students complain instead about other problems, such as faculty turnover. Throughout her Complaint, Thornhill alleges that a central feature of Walden's alleged scheme to deliberately delay its doctorial programs is faculty turnover based on a "systematic and institutional" inability to retain committee chairs and committee members. (*Id.*, ¶¶ 107-112). While alleging that "the turnover is intentional and part of Walden's policy to essentially hold its students captive to the tuition generating machine that Walden has constructed," (*Id.*, ¶ 112), such turnover was never a problem for Thornhill herself. During the course of her participation in the Walden Dissertation Process, Thornhill had just one committee chair (Dr. Banner) and one committee member (Dr. Steve Tippens). (*Id.*, ¶¶ 131; 132). Thus, to the extent that faculty turnover at Walden was allegedly common in Walden's doctorial programs, Thornhill's experience was atypical of those of other students allegedly delayed by this practice.

Similarly, Thornhill claims that had she been informed in the summer of 2011 of Walden's "abysmally low completion rate" for doctoral degrees, she would not have enrolled in Walden's doctoral program in the first instance. (*Id.*, ¶ 152). However, Thornhill alleges that by 2012 (just six months after she enrolled) Walden began to make "meaningful data regarding

---

[5] (*Id.*, ¶¶ 136, 140) (alleging that from January 2, 2015 until of August of 2016, doctoral students were not permitted to use Walden's online Writing Center resource).

graduation rates of its various doctorial programs" publicly available. (*Id.*, ¶ 40).  Thus, on the face of the Complaint, Walden's alleged fraudulent concealment of its graduation rates at the time Thornhill enrolled in 2011 cannot give rise to claims by students who enrolled beginning in 2012.  As illustrated by these examples, Plaintiff's fraud and consumer protection claims present a host of individualized issues of reliance and causation that will preclude class certification.

Moreover, as explained in pages 54-55 of the Memorandum in Support of Defendants' Motion to Dismiss (which are incorporated herein by reference), Thornhill's attempt to assert claims on behalf of the Ohio Sub-Class under Ohio's Consumer Sales Practice Act ("OCSPA"), §1345.20 is foreclosed by her failure to allege and show compliance with the statute's class-action notice requirements under § 1345.09(B) of the statute.

### B.  Lack of Predominance – Breach of Contract and Unjust Enrichment.

As alleged in the Complaint, this case does not involve a form contract commonly entered into with all members of the proposed Class or Ohio Sub-Class.  Rather, the alleged "contract" at issue is patched together and implied from snippets of alleged written statements found on websites and student handbooks, and alleged verbal comments from recruiters. (*Id.*, ¶¶ 209; 254).  Blurring the distinction between a promise of future performance, as opposed to a misrepresentation of a present material fact, the same alleged statements referenced in Plaintiff's fraud claims also form the basis for her breach of contract claims.[6]  Those same alleged promises further provide the basis for Plaintiff's unjust enrichment claims.[7]

---

[6] (*Id.*) (*Compare* ¶¶ 191-205 (Count I) with ¶¶ 206-16 (Count II); and ¶¶ 251-62 (Count VI) with ¶¶ 263-70 (Count VII)).

[7] (*Id.*, ¶¶ 232; 267) (alleging that the Defendants were unjustly enriched by collecting tuition and fees from students for programs that allegedly "did not provide students with a doctoral process that was ***promised*** and ***contemplated*** in connection with the payment of tuition.") (emphasis added).

Although "claims arising from the interpretation of a ***form contract***, [which] are particularly suited for class treatment . . . and certified as such,"[8] breach of contract claims premised on implied contracts or those allegedly formed by course of dealing between the parties inherently raise individualized fact issues that are ill-suited for class treatment.  Not only is lack of uniformity in the alleged contractual terms and their alleged breach  fatal to class certification, but such alleged breaches invariably raise individualized factual issues relating to waiver by continued enrollment and limitations. Moreover, even in cases involving a form contract uniformly governed by the law of a single state, courts have struck class allegations where proving breach of the contract requires individualized fact-finding. *See, e.g., Sherrod,* 2016 U.S. Dist. LEXIS 179 at *16-17 (striking class allegations premised upon claim alleging breach of a written contract governed by New York law because "The breach of contract elements at issue . . . would need to be proved by the same types of evidence that Sherrod presents here: affidavits, e-mail reports and screenshots").

Here, because the alleged promises at issue changed over time and varied from student-to-student, Plaintiff's breach of contract and unjust enrichment claims inherently present individualized issues of fact ill-suited for class certification. The terms of Walden's alleged "contract" with each class member can vary materially depending on when each student enrolled, the doctoral degree sought and the individual recruiters with whom he or she spoke.  Just as the terms of the contract with each class member vary, so does the manner in which Walden allegedly breached each contract.  For example, by allegedly cutting off her access to the MyDr application, Thornhill alleges that Walden breached an alleged contractual promise (implied from Walden's Student Handbook) that Walden's faculty would work with her as a "team."

---

[8] *Cowit*, 2013 U.S. Dist. LEXIS 32219 at * 20 (emphasis added).

(Compl., ¶¶ 141-42). Another student, however, may have been completely unaffected by an alleged lack of access to the MyDr application, but may claim breach of contract by virtue of faculty turnover during his or her dissertation – a problem not shared by Thornhill. As illustrated by these examples, therefore, Plaintiff's claims of breach of contract and unjust enrichment premised on Walden's alleged broken promises present a myriad of individualized fact issues that preclude class certification.

## IV. Thornhill's Claims are not Typical of the Proposed Nationwide Class or Ohio Sub-Class.

In addition to a lack of predominance under Rule 23(b), Thornhill's class allegations further fail for lack of typicality under Rule 23(a). "'The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claim of the class.'" *Schumacher*, 2015 U.S. Dist. LEXIS 11857 at * 19 (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d. 388, 399 (6th Cir. 1998)). "There must be some connection . . . between the merits of each individual claim and the conduct affecting the class. Absent such a connection, there is no basis upon which to fashion class-wide relief." *Id.* (citing *Romberio v. UnumProvident Corp.*, 385 Fed. Appx. 423, 431 (6th Cir. 2009). "Where a class definition encompasses many individuals who have no claim at all to the relief requested, or where there are defenses unique to the individual claims of the class members, the typicality premise is lacking, for--under those circumstances--it cannot be said that a class member who proves his own claim would necessarily prove the claims of other class members." *Id.*

Here, the same definitional infirmities that render the class unascertainable (as discussed in Section I above) defeat the element typicality under Rule 23(a). Typicality is further defeated by: (i) the material differences between the alleged promises and representations made to Thornhill and those allegedly made over time to other members of the nationwide Class and

Ohio Sub-Class; and (ii) the individualized reasons for each student's alleged failure to timely complete his or her doctoral degree with Walden.  On the face of the Complaint, the experiences of each individual doctoral student are so varied that one could never plausibly conclude that as goes the claim of Thornhill, so goes the claim of the class.

## V. Individual Litigation is Superior to the Proposed Class Action

Finally, it is clear from the face of the Complaint that a class action is not the superior method of adjudicating Plaintiff's claims.  In addition to all of the other considerations referenced above, it is important to recognize that, as alleged, the amount of damages potentially recoverable by an individual plaintiff in this case is not an insignificant amount of money. "A class action solves the problem of small individual recoveries 'by aggregating them into something worth someone's (usually an attorney's) labor." *Schumacher,* 2015 U.S. Dist. LEXIS 11857 at * 19 (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997)).

As doctoral students, Thornhill and other members of the proposed Class and Ohio Sub-Class are highly educated plaintiffs who necessarily have undergraduate degrees and, in some instances, Masters degrees in their chosen fields.  Thornhill claims that in her unsuccessful pursuit of a doctoral degree with Walden, she spent and now seeks to recover in excess $ 67,000 in tuition and other fees. (Compl., ¶¶ 127-29).  Plaintiff further alleges that other class members spent upwards to $100,000 to $200,000 in pursuing doctoral degrees from Walden. (*Id.*, ¶ 4). These alleged compensatory damages, when coupled with the potential recovery of alleged exemplary damages and reasonable attorneys' fees under certain consumer protection statutes, may make pursuit of individual claims worthwhile for a potential plaintiff and his or her counsel.

Thus, the proposed nationwide Class and Ohio Sub-Class further fails for lack of "superiority" under Rule 23.

## CONCLUSION

**WHEREFORE**, for all the foregoing reasons, Defendants Walden and Laureate respectfully request that this Court strike the class allegations in the Complaint.

Dated:  December 15, 2016

Respectfully submitted,

*s/Sanford E. Watson (Trial Attorney)*
Sanford E. Watson (0040862), Trial Attorney
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Telephone:    216-592-5000
Facsimile:    216-592-5009
E-mail:            sanford.watson@tuckerellis.com

Brian Laliberte (0071125)
Scott J. Stitt (0073943)
TUCKER ELLIS LLP
175 South Third Street, Suite 520
Columbus, OH 43215
Telephone:    614-358-9717
Facsimile:    614-358-9712
E-mail:            brian.laliberte@tuckerellis.com
                        scott.stitt@tuckerellis.com

*Of counsel:*

Kathleen Pontone (*pro hac vice* pending)
Anthony Walter Kraus (*pro hac vice* pending)
Stephanie Kaye Baron (*pro hac vice* pending)
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, MD 21202
Telephone:    410-727-6464
Facsimile:    410-385-3700
E-mail:    kpontone@milesstockbridge.com
                akraus@milesstockbridge.com
                sbaron@milesstockbridge.com

*Counsel for Defendants Walden University, LLC
and Laureate International Universities d/b/a
Laureate Education Inc.*

24

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2016, a copy of the foregoing **Memorandum in Support of Defendants' Motion to Strike Class Action Allegations** was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/Sanford E. Watson (Trial Attorney)*
Sanford E. Watson (0040862), Trial Attorney
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Telephone:    216-592-5000
Facsimile:    216-592-5009
E-mail:  sanford.watson@tuckerellis.com

*Counsel for Defendants Walden University, LLC, and Laureate Universities dba Laureate Education, Inc.*

4852-6416-9021, v. 6